## STATEMENT OF FACTS

Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, Detective Palchak ("UC") previously registered as a member and created an online profile on a predicated social network site which, based on the UC's experience and information gathered from other sources, is a site frequented by individuals that have a sexual interest in children.

On March 5, 2012, at approximately 11:46 a.m., the UC sent a message in the public area of the "incest" chat room on the predicated social network site inquiring, "Any other no limit pervs" in the Washington, DC metropolitan area.  At 11:47 a.m., an individual using the screen name "chuck_2131" initiated a private instant message chat with the UC through the predicated social network site.  During the early portion of the instant message chat, "chuck_2131" – who was later identified as the defendant, Charles Augustus Nickerson, Jr. – identified himself as a 33-year-old male from Maryland, specifically an area near Baltimore.  In response to the UC's noted interest in "yng" and "incest", the defendant noted that he was interested in the "same" and asked, "[H]ave you had incest b4[?]"

As the online exchange continued, the UC posed as an individual that had sexual access to his 12-year-old daughter.  When the UC inquired if he had "any exp[erience]," the defendant responded, "[Y]es . . . [with] friend daughter."  The defendant also inquired whether the UC would "share" his daughter and asked specifically about the girl, "[S]he have hair yet[?]"  When the UC offered to provide the defendant with a photo of the purported child, the defendant responded affirmatively, after which the defendant and the UC shifted their online conversation to Yahoo! Instant Messenger, a platform in which the defendant used the screen-name "Chuck Nickerson".  The UC subsequently sent the defendant a morphed, clothed picture of the purported child, to which the defendant responded, "Very cute . . . would I need a condoms[?]"

As the online conversation continued, the defendant provided further details regarding the 11-year-old daughter of his friend with whom he has been sexually active.  Specifically, the defendant noted that he still engages her in sexual acts and that his friend does not know about it.  He stated further that it has been a "month or so" since he last engaged her in sexual acts, and noted that he "fill[ed] her full of cum" at the child's house while her parents "are out drinking."  He explained that, "as soon as they go she just gets naked."

During the course of the online chat on March 5, 2012, the defendant sent the UC five images of child pornography.  The first image – titled "0001 (1214)" – depicted a prepubescent girl being vaginally penetrated by an adult male penis.  The second image – titled "-00a(3)" – depicted a prepubescent girl spreading her bare vagina with what appeared to be semen covering her bare vagina.  The third image – titled "untitled.bmp" – depicted a bare vagina with a hand covering her face (age unknown).  The fourth image – titled "localone_mommyfun2131_ 1316635965" – depicted a young girl 12-15 lying naked with her legs slightly spread exposing her

1

vagina.  The fifth image – titled "LetsHavingFun69_mommyfun2131_1330438276" – depicted a prepubescent girl holding an erect penis with her hand with her mouth close to the penis.

During the March 5 online chat, the UC and the defendant also discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the UC's purported 12-year-old daughter.   The defendant asked, "[W]ill you tell her about me[?] . . . [W]ill you get me a few more pics of her . . . with a lil less on[?]"   As their initial online chat drew to a close at approximately 1:25 p.m. on March 5, 2012, the defendant told the UC to "fin[ ]d out when her next period will be."

The UC and the defendant resumed their online exchange at approximately 8:11 p.m. on March 5, 2012.  After learning that the UC had been to see his daughter following their initial interaction that day, the defendant inquired, "[D]id you find when her period is[?]"   When the UC noted that he would find out, the defendant asked, "[D]o you want me to pull out . . . I would love to put 4 or 5 loading in her . . . I hope you let me."   The defendant also inquired, "[W]hat will you let her wear . . . a dress or skirt . . . she wear a bra yet[?]"   The defendant then instructed the UC to have the child "wear a tight shirt no bra . . . and a short skirt . . . maybe no panties."   In discussing the planned threesome with the purported child, the defendant asked, "[D]o you want to [double-penetrate] her[?]"   The defendant also asked, "[I]s she a dirty lil girl . . . are you training her to be a lil whore[?]"   In the course of the online exchange, the defendant also noted that he had KY lubricant to bring with him, as well as a camera.   The defendant also asked if the UC would have the purported child "all weekend long" so that they could "use her all night."   The defendant also inquired if the UC would allow the purported girl to become pregnant "when she gets a few years older," and added "maybe at 14 . . . it would be more hott now . . . and make her have it."   The defendant also asked, "[A]re you training her to be a slave . . . that's how girls should be."   With respect to their planned meeting with the girl, the defendant also noted, "[W]e can fuck her for hours . . . you want to make her loo[se] . . . you want to dp [(double-penetrate) her pussy[?]"

During the course of the March 5 online exchange, the defendant also transmitted a photograph of himself to the UC.

On Tuesday, March 6, 2012, the defendant and the UC engaged in an additional instant message conversation online.   Towards the beginning of the online exchange, the defendant asked, "[W]ill you see your daughter this week[?]"   When told by the UC that the purported child "will be here Fri[day]," the defendant replied, "[I]s she ready[?]"   As the online conversation continued, the defendant asked for additional details relating to the child – inquiring, "[D]o you call her a whore . . . I like her to be a big whore . . . have her go in her[e] and dress like a whore."   With respect to the planned meeting, the defendant asked, "[W]ill you have to tell her to do stuff" and also whether the child is "ok with getting her pic taken."   In discussing the taking of pictures during the planned meeting, the defendant noted that he had a "nice camer[a]" to bring with him. The defendant noted that, in taking the pictures, he would "start when her being a good girl . . . then make her sit with her legs open . . . then make her get naked . . . make her finger her pussy."   The defendant also asked, "[D]o you use toys on her yet[?]", and noted further, "[I] have a pussy pump and a pump dildo . . . you want to pump the dildo in her to open her wide . . . then we can dp

2

[(double-penetrate) her pussy." The defendant also noted, "[I] want to take pic of her cunt with my cum running out of her . . . make her a bareback whore . . . tell her if any one wants to fuck her it has to be bareback" – which is a reference to engaging in unprotected sex. The defendant also noted his desire to "fill her full of my seed . . . and watch her tummy grow."

During the March 6 chat, the UC specifically asked the defendant whether he was "serious about coming or are you just into the fantasy just want to know . . . im into realtime . . . I know some guys just like fantasy so just checking . . . no worries either way" – to which the defendant responded, "[Y]es I want real time." Immediately following that exchange, the defendant noted, "[I] can pull out if you want me too . . . or a condom," and then stated further, "[I]t would be hot if she did get preg[nant]." The defendant and the UC thereafter discussed logistics relating to the planned meeting and the possibility of taking the purported child out for dinner. The defendant asked the UC, "[W]ill you let her go out looking like a lil whore . . . short skirt tight top pig tales and no bra or panties[?]" The defendant also asked the UC, "[D]oes she do as she[']s told[?]" The defendant also stated, "[O]ne day I may have a lil girl . . .maybe we start her sooner." He added, "[M]aybe in a few years your daughter will have a daughter . . . can I get her preg[nant] then . . . maybe I can marry her on her 18th b-day."

On Wednesday, March 7, 2012, the defendant and the UC resumed their online exchange, during which the defendant noted his continued interest in meeting on Friday, March 9, 2012. The defendant asked, "[D]oes she suck cock good . . . she swallow[?]" The defendant also noted that he was "just a lil scared." The defendant also asked various questions about the purported child, inquiring specifically, "[H]ow many finger[s] can you get in her ass . . .you should start trying to work mo[r]e in . . . lo[v]e to dp her." The defendant also asked, "[W]hat her pussy look like . . .not many hairs[?]"

During the March 7 chat, the defendant also noted that he has a 4-year-old son for whom he has shared-custody every other weekend. The defendant described a "few times" that he has bathed with his son – during which he "just wash[ed] him a lil longer down there" and also had his son wash his penis until the defendant became erect. The defendant and the UC thereafter discussed having the defendant's son and the UC's purported daughter engage in sexual acts in the future, with the defendant noting that they would "have her suck him" and expressing that he would "love to see him try to fuck her."

With respect to the planned meeting with the purported 12-year-old girl on March 9, the UC again provided the defendant an opportunity to opt-out – telling him, "[A]gain if you don't want to meet I understand just let me know so im not waiting for you and you don't show up . . . that would be a dick move, I still want to be your friend even if you don't want to join in" – to which the defendant responded, "[I] want to join in but very scared . . . I want to so bad . . . I wish we could do it at my house." The defendant and the UC also discussed the possibility of meeting at a hotel, but the defendant noted, "[H]otel may not be good . . . 2 guys take a lil girl in a room . . .they have cam there . . . and one of are name would be on the check in." When asked if he was nervous that the UC was "not real," the defendant replied, "[O]r your a cop." The defendant also stated, "I don't want to come over and it a trap." When told that they could wait longer or "just

3

not even do it at all," the defendant responded, "[I] want to do it."   Towards the end of the March 7 exchange, the defendant noted his desire to "[L]ets try fri[day]," and noted further, "[I] hope this wont be just once."

On Thursday, March 8, 2012, the defendant and the UC resumed their online conversation. The defendant asked, "[Y]ou ready for tomorrow[?]" and noted that he was "scared shitless." The defendant and the UC further agreed to meet beforehand to validate that neither was affiliated with law enforcement.   In discussing the planned meeting with the purported girl, the defendant asked, "[W]ill she be shy . . . she like to kiss[?]"   The defendant also noted, "[I] like if you told her to get in her sully lil skirt . . . then have he[r] come sit on my lap an[d] tell me she a dirty lil whore . . . and start kissing me . . . I want her to make the moves . . . how dirty you want to make her[?]" The defendant also explained that he would bring a "pussy pump to make her lips get bigger" and to "open up her cunt."

On Friday, March 9, 2012, the defendant and the UC engaged in additional online exchanges relating to their planned meeting with the purported 12-year-old girl.   The defendant indicated that he wanted the child to "ask me if im going to cum in her . . . then ill ask her [if] she wants me too . . . after she say yes . . . I want her to ask me if im fixed like daddy."   The defendant also explained that the "pump cock" he would be bringing "will open her up."   The defendant also inquired if he "should shave" before their meeting, and explained to the UC that he would just "trim" his pubic area.

During the course of the March 9 chat, the defendant indicated that he would get his GPS device and put it in his truck.   At one point, law enforcement agents conducting surveillance of the defendant's home in Stevensville, Maryland observed the defendant exit his house and go to his car, after which the defendant returned inside.   In his chat with the UC, the defendant again reiterated that he was "scared" to meet and noted, "I don't want to go to jail e[i]ther . . . ive never done this b4."   The defendant asked to see a pornographic picture of the purported child, to which the UC responded, "I am really looking for real time not into pic sharing . . . if you feel uncomfortable about coming I totally understand" – to which the defendant replied, "[J]ust scared."   The defendant also noted his desire "to have a ltr [(long term relationship)] with you two . . . this could be a great thing."   The defendant also asked, "[C]an we all meet at the same time[?]" When the UC indicated that the defendant could stand in front of his building to see the purported child being dropped off, the defendant stated, "[Y]eah ill take the risk."

At approximately 5:32 p.m. on March 9, 2012, the defendant asked the UC to provide his address and noted that he would be leaving in 5 minutes, after getting gas.   The defendant noted that he would arrive in approximately 50 minutes and asked for the UC's telephone number.   The defendant also asked if the purported girl had arrived already, to which the UC responded that she would be there around 7:00 or 7:30 p.m.   At approximately, 5:45 p.m., the defendant sent an online message stating, "Leaven now."

During the course of the online chat between the defendant and the UC on March 5, 2012, the UC captured the IP address being utilized by the defendant.   Follow-up investigation relating

4

to that IP address indicated that it resolved back to Verizon Internet Services out of Hurlock, Maryland. Through additional follow-up investigation, including the use of law enforcement and public database searches, based on the information obtained during the online chats, law enforcement identified the defendant and obtained a copy of his DMV identification photograph. The person depicted in the DMV photograph matched the person depicted in the photograph that the defendant transmitted to the UC during the course of the online chat.

At approximately 7:00 p.m. on March 9, 2012, the defendant was observed traveling northbound in the 700 block of 5th Street, NW, Washington, DC in a large Ford pick-up truck. The defendant was stopped in his vehicle at 6th and Massachusetts Ave, NW, Washington, DC and placed under arrest without incident. The defendant produced a Maryland Driver's License bearing the name "Charles Nickerson, Jr." A subsequent inventory search of the defendant's vehicle revealed the presence of two child car-seats – one appearing related to a girl and the other a boy – and a blue bag containing KY lubricant, a "FinePix" digital camera, a GPS device and various forms of sexual paraphernalia in its original packaging, including a "pussy pump", a "prostate probe" and two vibrating dildos.

_____
DETECTIVE TIMOTHY PALCHAK
METROPOLITAN POLICE DEPARTMENT

Sworn and subscribed to before me this _____ day of March, 2012.

_____
JOHN M. FACCIOLA
United States Magistrate Judge